IN THE CIRCUIT COURT OF THE SIXTH JUDICAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

NICHOLAS FRANCE AND
GRETCHEN FRANCE, individually,

   Plaintiffs,    Case No.:_____

v.

DITECH FINANCIAL, LLC, a foreign
limited liability company,

   Defendant.
_____/

## COMPLAINT AND JURY DEMAND

**COMES NOW** the Plaintiffs, Nicholas France and Gretchen France, by and through the undersigned counsel, and file their Complaint and Jury Demand against the Defendant, Ditech Financial, LLC, and would show:

## INTRODUCTION

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt. Plaintiff brings the action for statutory damages and actual damages against the Defendant, as well as attorney's fees and the costs of litigation for the Defendant's violations of the Florida Consumer Collection Practices Act, Title XXXIII, Chapter 559, Part VI, Florida Statutes ("FCCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and violations of the Telephone Consumer Practices Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). These laws prevent creditors and debt collectors from *inter alia,* engaging in abusive, unfair and deceptive

debt collection practices, as well as regulate the type of telephone equipment organizations may use to contact consumers for debt collection purposes.

## JURISDICTION AND VENUE

1. This is an action for money damages in excess of fifteen thousand dollars ($15,000.00) exclusive of costs and attorney's fees.

2. Jurisdiction of this Court arises under 559.77(1). Fla. Stat. And 47 U.S.C. § 227(b)(3).

3. Venue lies in this district pursuant to 559.77(1). Fla. Stat. And 47 U.S.C. § 227(b)(3).

4. Venue in this district is proper in that the Defendant conducts business here, and the conduct complained of occurred here.

5. This Court has jurisdiction.

## PARTIES

6. Plaintiff, Nicholas France, is an individual, a natural person and a "consumer" residing in Pasco County, Florida, who is alleged to owe a debt to Ditech Financial, LLC.

7. Plaintiff, Gretchen France, is an individual, a natural person and a "consumer" residing in Pasco County, Florida, who is alleged to owe a debt to Ditech Financial, LLC.

8. Plaintiffs, Nicholas and Gretchen France ("Plaintiffs" or "France") have been the object of collection activity arising from a "consumer debt" as defined by Fla. Stat. § 559.55(6) and 15 U.S.C. § 1692a(5). The subject Debt was incurred primarily for personal, family, or household purposes.

9. The Defendant, Ditech Financial, LLC ("Ditech" or "Defendant"), is a foreign limited liability company that conducts business in Pasco County, Florida.

10. Defendant is engaged in the collection of consumer debts using the telephone, the U.S. Mail, and all other means at its disposal. Defendant is a "debt collector" as defined by the FCCPA.

11. At all times herein, Defendant was a "person" as defined by Section 559.55, Fla. Stat. *See Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

12. At all times herein, the Defendant either acted on its own accord, or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

13. At all times material herein, Defendant's conduct with regard to the debt, complained of below, qualifies as "communication" as defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692(a)(2).

14. At all times material herein, Defendant used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1); which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers.

**FACTUAL ALLEGATIONS**

15. On October 5, 2009, a Mortgage was recorded against France's property by virtue of a promissory note dated September 28, 2009 (the "debt").

16. The subject debt was incurred primarily for personal, household or family use.

17. On or about May 1, 2014 Ditech took over servicing of the debt and reviewed and boarded the loan servicing and collateral files.

18. On or about December 16, 2015, Ditech initiated a foreclosure action against France styled *Ditech Financial, LLC v. France, et al.*, Case No. 2015-CA-04023 (Sixth Judicial Circuit, Pasco County, Florida) (the "debt collection action").

19. Shortly, thereafter, France retained legal counsel, Andrew Lyons, Esq., to represent them with respect to the debt and defend the foreclosure action and debt collection.

20. On or about January 25, 2016, Andrew Lyons, Esq., filed his appearance as counsel on behalf of France with the relevant court and Ditech's counsel.

21. On July 12, 2016, Plaintiffs filed their answer and affirmative defenses in the Debt Collection Action. The answer included a dispute of the validity of the debt as follows:

> Notice is hereby given that the Defendants dispute the amount of the consumer debt asserted in Plaintiff's Complaint and Plaintiff's legal right to collect that debt. Accordingly, Defendants demand strict compliance with the Fair Debt Collection Practices Act.

22. On November 2, 2016, Andrew Lyons, Esq., sent Ditech a written Demand for Verification of Debt and Notice to Cease and Desist ("Notice") communications with Plaintiffs. The Notice specifically stated that "[i]n addition to the cessation of all debt collection communications, [borrower] hereby gives notice of withdraw of any prior consent to be contacted for any purpose at home, at work, by cellular phone, by mail, by email or otherwise."

23. France has been continuously represented by counsel with respect to the debt from at least January 25, 2016, to the present and Ditech has always been aware of France's representation by legal counsel during this period.

24. Notwithstanding Ditech's actual knowledge of France having retained legal counsel with respect to the debt, Ditech contacted France directly on multiple occasions for the purposes of collecting on the alleged consumer debt.

25. On or about May 2014, in an attempt to collect upon the debt, Ditech commenced placing calls directly to France's cellular telephones for the purposes of collecting upon the debt.

26. Plaintiffs are the owners, regular users, and possessors of cellular telephone numbers 727-XXX-0675 and 727-XXX-1069.

27. At no time herein did Ditech have prior express consent to contact Plaintiffs on their cellular telephones using an automated dialing system or artificial pre-recorded voice.

28. Ditech, and its representatives, agents, employees, or assigns have telephoned Plaintiffs' cellular telephone on numerous occasions for the purposes of collecting on the alleged debt, in violation of the TCPA, 47 U.S.C. § 227 *et seq.,* and Florida Consumer Practices Act, Fla. Stat. § 559.72(7) and § 559.72(18).

29. Upon information and belief, Ditech and its collectors and agents, repeatedly used an automatic telephone dialing system to call Plaintiffs' cellular telephone in an attempt to collect on the alleged debt, and without Plaintiffs' prior express consent.

5

30. France would often receive automated pre-recorded messages from unanswered calls, requesting that Plaintiffs contact Ditech at 1-800-643-0202. Such messages are indicative of the use of an automatic telephone dialing system.

31. Specifically, despite Ditech's lack of consent to contact Plaintiffs on their cellular telephones, Ditech contacted Plaintiffs' cellular telephones, using an auto-dialer to make each telephone call on May 8, 2014 at 9:50 A.M.; May 22, 2014 at 1:20 P.M.; May 29, 2014 at 4:19 P.M.; May 30, 2014 at 11:55 A.M.; June 17, 2014 at 7:34 A.M.; June 18, 2014 at 12:56 P.M. and 7:47 P.M.; June 19, 2014 at 8:04 A.M.; June 20, 2014 at 8:27 A.M.; June 23, 2014 at 7:47 A.M. and 5:09 P.M.; June 24, 2014, twice at 8:56 A.M. and again at 12:59 P.M.; June 25, 2014 at 7:23 A.M. and twice at 10:41 A.M.; June 26, 2014 at 9:36 A.M. and twice at 10:25 A.M.; June 27, 2014 at 7:31 A.M., 9:07 A.M. and 9:09 A.M.; June 28, 2014 at 7:28 A.M. and 11:32 A.M.; June 30, 2014 twice at 7:50 A.M.; July 3, 2014 at 11:42 A.M., July 7, 2017 at 6:03 P.M.; July 9, 2014 twice at 11:38 A.M.; July 10, 2014 at 11:57 A.M.; July 12, 2014 twice at 8:07 A.M.; July 15, 2014 twice at 5:00 P.M. and again at 7:20 P.M.; July 17, 2014 twice at 9:49 A.M.; July 22, 2014 twice at 6:14 P.M.; July 25, 2014 twice at 8:27 A.M.; July 26, 2014 twice at 9:42 A.M.; July 28, 2014 AT 10:55 A.M.; July 29, 2014 twice at 9:45 A.M.; July 30, 2014 at 10:31 A.M.; July 31, 2014 twice at 7:32 P.M.; August 1, 2014 twice at 8:44 A.M.; August 4, 2014 at 12:56 P.M.; September 22, 2014 at 2:29 P.M.; September 23, 2014 at 12:07 P.M.; September 24, 2014 at 12:39 P.M.; September 26, 2014 at 10:54 A.M.; November 5, 2014 at 4:20 P.M.; November 7, 2014 twice at 12:00 P.M.; November 10, 2014 at 7:11 A.M., 9:44 A.M., and twice at 11:18 A.M.; November 11, 2014 at 8:45 A.M.; November 12, 2014 twice at 2:22 P.M.; November 13, 2014 at 12:57 P.M.; November 13, 2014

twice at 2:57 P.M.; November 14, 2014 twice at 9:58 A.M.; November 15, 2014 twice at 8:11 A.M.; November 17, 2014 twice at 1:58 P.M.; November 18, 2014 twice at 2:05 P.M.; November 19, 2014 twice at 6:54 P.M.; November 20, 2014 at 8:58 A.M. and 9:02 A.M.; November 21, 2014 twice at 7: 38 A.M.; November 21, 2014 twice at 11:01 A.M. and twice at 1:25 P.M.; November 22, 2014 twice at 8:39A.M. and twice at 10:47 A.M. This is merely a sampling of the calls as Plaintiffs received no less than three hundred and twenty seven (327) calls from May 2014 through October 2017.

32. To the extent Ditech contends that it had consent to contact France on their cellular telephones, any such consent was revoked to make auto-dialed debt collection calls to France's cellular telephones the moment Ditech was advised of France's representation by legal counsel with respect to the Debt and again when France requested in writing and verbally that all direct communications and calls cease.

33. Notwithstanding France having retained legal counsel and Ditech having knowledge of this circumstance, and having received two or more specific requests to cease and desist all communications, Ditech has willfully and knowingly continued to contact Plaintiffs directly on multiple occasions, via U.S. Mail and cellular telephone, for the purposes of collecting on the debt.

34. Specifically, despite Ditech's lack of consent to contact France on their cellular telephones, and France's withdraw of any such consent, Ditech continued to place the following calls directly to France's cellular telephones, using an auto-dialer to make each telephone call on November 8, 2016 at 11:53 A.M.; November 15, 2016 at 11:11 A.M.; November 21, 2016 at 11:45 A.M.; November 28, 2016 at 5:55 P.M.; November 28, 2016 at 7:26 P.M.; December 5, 2016 at 3:07 P.M.; December 12, 2016 at

2:03 P.M.; December 19, 2016 at 12:45 P.M.; December 27, 2016 at 3:32 P.M.; January 9, 2017 at 2:30 P.M.; January 23, 2017 at 12:58 P.M.; and January 30, 2017 at 4:42 P.M. This is merely a sampling of the calls as Plaintiffs received no less than thirteen (13) calls from November 2, 2016 to as recently as October 2017.

35. On March 8, 2017, at approximately 2:40 P.M., Plaintiff, Gretchen France answered one of Ditech's collection calls to Plaintiffs' cellular telephone number at 727-XXX-0675. Upon answering the call, Ms. France experienced a period of silence for several seconds, then a mechanical clicking noise prior to a live person coming onto the line.

36. Upon information and belief, the immediately aforementioned characteristics of the telephone calls indicate that Ditech used an automatic telephone dialing system ("auto-dialer") to place the telephone calls each time that it called France's cellular telephones.

37. During said collection telephone call from Ditech, Ms. France specifically told a representative of Ditech to cease all direct communications, that she withdrew any prior consent to be contacted, and that she was represented by legal counsel with respect to the debt.

38. Despite Plaintiffs informing Defendant it did not have consent to call their cellular telephones, Defendant continued to call their cellular telephone number 727-XXX-0675, subsequent to the above conversation, using an auto-dialer to make each telephone call, on March 15, 2017 at approximately 3:26 P.M. and March 24, 2017 at approximately 4:32 P.M.

39. In addition to the aforementioned automated collection calls, and notwithstanding Ditech's actual knowledge of France having retained legal counsel, and having received a specific request to cease and desist all communications; Ditech has willfully and knowingly continued to contact France directly on multiple occasions by U.S. Mail for the purposes of collecting on the consumer debt.

40. On or about November 16, 2016; December 16, 2016; January 17, 2017; February 16, 2017; March 16, 2017; and April 17, 2017; May 16, 2017; June 16, 2017; July 17, 2017; August 16, 2017; September 16, 2017; and October 16, 2017 Ditech contacted France for the purposes of collecting on the alleged debt via mail, by requesting that France pay a certain amount of money by a date certain, and in direct contravention of the notice of legal representation.

41. The above referenced correspondence sent to France by Ditech further asserted the right to collect, and in fact assessed late fees in the amount of $62.46 if payment was not received by the 16th of each month.

42. By charging or threatening to charge a late fee on a debt which has been accelerated since January 11, 2016, Ditech is claiming, attempting or threatening to assert the existence of a legal right to charge late fees on an accelerated consumer debt when Ditech has knowledge that such right does not exist.

43. On or about January 3, 2017; January 16, 2017; March 11, 2017; April 19, 2017; June 17, 2017; June 30, 2017; July 17, 2017; August 9, 2017; August 16, 2017; and September 6, 2017, Ditech further contacted France for the purposes of collecting on the alleged debt via mail, by sending correspondence requesting France submit documents to be considered for loss mitigation options, by attempting to induce France to contact

Ditech's representatives to pay, settle the debt, or discuss loss mitigation in direct contravention of the notice of legal representation.

44. On or about June 6, 2017; Ditech further contacted France for the purposes of collecting on the alleged debt via mail, by sending an escrow disclosure notice indicating an escrow shortage of $2,132.22 and requesting that France pay the same.

45. Ditech has contacted France by mail no less than twenty three (23) times since November 2016, for the purposes of collecting on the alleged debt by requesting that France pay a certain amount of money by a date certain, assessing a late fee, and threatening to assess additional late fees if such amount is not paid; in direct contravention of Ditech's knowledge of France's representation by legal counsel and request to cease and desist communications.

46. Ditech has contacted France on their cellular telephones no less than three hundred twenty seven (327) times since May 2014, for the purposes of collecting on the alleged debt, using an automated dialer to make each call, without France's prior express consent.

47. The aforementioned conduct by Ditech has harassed or could be reasonably expected to harass or abuse France at their home and place of employment by willfully communicating with France frequently and regularly before the hours of 8:00 a.m., despite actual knowledge of France's representation by legal counsel, and despite France's written and verbal requests that all communications cease.

48. Specifically, Plaintiffs endured continuous contacts from Ditech beginning May 2014 and continuing, which include:

    a. Telephone calls to France's residence more than once a week;

    b. Visits to France's residence;

    c. Letters, cards, telegrams, special delivery letters;

    d. Threats to report France to other creditors or to a credit agency;

    e. Threats to foreclosure upon France's real estate;

    f. Vague threats which worried France.

49. All three hundred twenty seven (327) of the aforementioned telephone calls were willfully and knowingly made by Ditech to the France's cellular telephones after Ditech was made aware that France did not consent to receiving such calls.

50. France has retained the law firm of The Lyons Law Group, P.A. for the purpose of pursuing the matter against the Defendant and is obligated to pay a reasonable fee for their services.

51. Pursuant to § 559.77, Plaintiffs are each entitled an award of up to $1,000.00 statutory damages against Defendant per independent, temporally-displaced violation, plus actual damages, and an award of attorneys' fees and costs to Plaintiffs should they prevail in this matter against Defendant.

52. Pursuant to 15 U.S.C. § 1692k, Plaintiffs are each entitled an award of up to $1,000.00 statutory damages against Defendant, plus actual damages, and an award of attorneys' fees and costs to Plaintiffs should they prevail in this matter against Defendant.

53. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiffs are entitled to an award of up to $500 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to their cellular telephones without prior express consent in violation of the TCPA.

54. Pursuant to 47 U.S.C. § 227(b)(3), the trial court may increase damages up to three times, or $1,500.00 for each telephone call made using any automatic telephone dialing system or an artificial prerecorded voice to Plaintiffs' cellular telephones without prior express consent in willful or knowing violation of the TCPA.

55. All conditions precedent to the filing of the action have been completed or have been waived.

## CAUSES OF ACTION

## COUNT I – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTIONS PRACTICES ACT

56. This is an action against the Defendant for violations of the FCCPA, Title XXXIII, Chapter 559, Part VI, Florida Statutes.

57. Plaintiff re-alleges and incorporates paragraphs 1-55 as though fully restated herein.

58. Defendant is subject to and has violated the provisions of Fla. Stat. § 559.72(18) by intentionally and repeatedly communicating with Plaintiffs by phone and email in an attempt to collect a debt, after being given actual notice that Plaintiffs are represented by legal counsel with respect to the debt and Plaintiffs request that all communications cease and desist.

59. Defendant has willfully communicated with Plaintiffs with such frequency as can reasonably be expected to harass Plaintiffs in violation of Fla. Stat. § 559.72(7), by repeatedly calling and contacting Plaintiffs no less than three hundred twenty seven (327) times, sometimes before 8:00 a.m. and at other times which were inconvenient for Plaintiffs, without Plaintiffs' consent, after being given actual notice that Plaintiffs are

represented by legal counsel with respect to the debt, and after receiving both written and verbal requests that all direct communications with Plaintiffs cease.

60. Defendant has engaged in other conduct which can reasonably be expected to abuse or harass Plaintiffs in violation of Fla. Stat. § 559.72(7), by repeatedly calling and contacting Plaintiffs no less than three hundred twenty seven (327) times, sometimes before 8:00 a.m. and at other times which were inconvenient for Plaintiffs, without Plaintiffs' consent, after being given actual notice that Plaintiffs are represented by legal counsel with respect to the debt, and after receiving both written and verbal requests that all direct communications with Plaintiffs cease.

61. Defendant has sought to claim, attempt, or threaten to enforce a debt which Defendant knows is not legitimate, or is asserting the existence of some legal right in violation of Fla. Stat. § 559.72(9), by seeking to assess a late charge on a debt that has been accelerated since January 11, 2016 in contravention of the Florida law.

62. The Defendant unlawfully used an autodialer to call the Plaintiffs' cellular telephones at least three hundred twenty seven (327), without Plaintiffs' express consent, while knowing the conduct was prohibited under the TCPA, and in violation of Fla. Stat. 559.72(7), 559.72(9), and 559.72(18).

63. Defendant, directly or through agents, acted with actual malice or deliberate oppression, or willfully, or with such gross negligence as to indicate a wanton disregard of the rights of Plaintiffs, including Plaintiffs' right to be left alone.

64. As a result of the forgoing violations of the FCCPA, Defendant is liable to Plaintiffs for actual damages, statutory damages, attorney's fees and the costs of litigation pursuant to Section 559.77(2), Fla. Stat.

WHEREFORE, Plaintiffs respectfully demand that the Court enter judgment in Plaintiffs' favor and against Defendant for:

    a. Damages;

    b. Attorney's fees and the costs of litigation;

    c. A permanent injunction enjoining Defendant from engaging in the complained-of practices; and

    d. Such other or further relief as the Court deems just and proper.

## COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

65. This is an action against the Defendant for violations of the FDCPA, 15 U.S.C. § 1692 et seq.,

66. Plaintiff re-alleges and incorporates paragraphs 1-55 as though fully restated herein.

67. Defendant is subject to and has violated the provisions of 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiffs despite Defendant's knowledge that Plaintiffs are represented by legal counsel with respect to the debt, and despite having legal counsel's contact information.

68. Defendant is subject to and has violated the provisions of 15 U.S.C. § 1692c(c) by communicating with Plaintiffs despite Plaintiffs' written request to cease all direct communications for purposes of collecting the debt.

69. The Defendant unlawfully used an autodialer to call the Plaintiffs' cellular telephones at least three hundred twenty seven (327) times, sometimes prior to 8:00 a.m.,

without Plaintiffs' express consent, while knowing the conduct was prohibited under the TCPA, and in violation of 15 U.S.C. § 1692d(5).

70. Defendant is subject to and has violated 15 U.S.C. § 1692e(2)(A), 1692e(10) and 1692f(1), by falsely representing the character, amount, or legal status of the debt in seeking to claim the existence of some legal right to assess a late charge on a debt that has been accelerated since January 11, 2016 in contravention of the Florida law.

71. Defendant, directly or through agents, acted with actual malice or deliberate oppression, or willfully, or with such gross negligence as to indicate a wanton disregard of the rights of Plaintiff, including Plaintiff's right to be left alone.

72. As a result of the forgoing violations of the FDCPA, Defendant is liable to Plaintiffs for actual damages, statutory damages, attorney's fees and the costs of litigation pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiffs respectfully demand that the Court enter judgment in Plaintiffs' favor and against Defendant for:

    a. Damages;

    b. Attorney's fees and the costs of litigation;

    c. A permanent injunction enjoining Defendant from engaging in the complained-of practices; and

    d. Such other or further relief as the Court deems just and proper.

## COUNT III – VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

62. This is an action against the Defendant for violations of the TCPA, 47 U.S.C. § 227 *et seq.*

63. Plaintiffs re-allege and incorporate paragraphs 1-55 as though fully restated herein.

64. Defendant, in the conduct of its business, used an automated telephone dialing system, as defined by 47 U.S.C. § 227(a)(1)(A) to place telephone calls to the Plaintiffs' cellular telephones.

65. Section 47 U.S.C. § 227(b)(1)(A)(iii provides in pertinent part:

It shall be unlawful for any person within the United States –

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automated telephone dialing system or an artificial or prerecorded voice –
    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

66. Defendant is subject to, and has violated the TCPA by using an automated telephone dialing system to call the Plaintiffs' cellular telephones, in excess of three hundred twenty seven (327) times, without their prior express consent.

67. Defendant is subject to, and has violated the TCPA by delivering prerecorded messages to the Plaintiffs' cellular telephones without their prior express consent.

68. Each of the telephone calls to the Plaintiffs' cellular telephones were knowingly, willfully and consciously made in violation of the TCPA, after the Plaintiffs had specifically told the Defendant that it did not have their consent to call their cellular telephones.

69. At no time herein did Defendants have Plaintiffs' prior express consent to call Plaintiffs on their cellular telephones.

70. Even if Defendant did have such consent, such consent was revoked (i) when Defendants were advised that Plaintiffs were represented by legal counsel with respect to the debt, (ii) when Plaintiffs' requested in writing that Defendant cease and desist all direct communications, and (iii) when Plaintiff verbally and explicitly requested that Defendants stop calling her and revoked any prior express consent for Defendant to call Plaintiffs' cellular telephones using an automatic telephone dialing system or prerecorded message.

71. Prior express consent may be revoked using any reasonable method including orally or in writing. See *In The Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, FCC 15-72 (CG Dkt No. 02-278, WC Dkt. No. 07-135) at ¶ 64 (July 10, 2015). Even oral instructions to cease calls effectively revokes any prior consent the caller claims they may have had. See *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

72. Despite the lack of any prior express consent, Defendants placed calls to Plaintiff's cellular telephone using an automated electronic dialing device and by leaving automated pre-recorded messages.

73. Plaintiffs have not been able to record the specifics of each and every call Defendants made to Plaintiffs on account of their personal and work commitments, on account of the sheer volume of calls, and due to the continued and increasing stress associated with the continued barrage of debt collection calls.

74.     None of the calls at issue were placed by Defendant to Plaintiffs' cellular telephones for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

75.     Defendant harassed Plaintiffs by incessantly calling Plaintiffs' cellular telephone.

76.     Defendant's phone calls harmed Plaintiffs by wasting Plaintiffs' time, causing untimely, constant interruptions and distractions, and depleted the battery life on Plaintiffs' cellular telephones.

77.     Defendant's phone calls harmed Plaintiffs by using minutes or texting data allocated to Plaintiffs' cellular telephone service provider and may have also used storage space on Plaintiffs' phone.

78.     The repeated phone calls (including the time of day and pattern) harmed Plaintiffs by intruding upon Plaintiffs' seclusion and invading Plaintiffs' privacy.

79.     The repeated phone calls harmed Plaintiffs by trespassing upon and interfering with Plaintiffs' rights and interests in Plaintiffs' cellular telephone lines

80.     Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call and determined that banning such calls made without consent was the only effective means of protecting telephone consumers from the nuisance and privacy invasion."

81.     Defendant's phone calls harmed Plaintiffs by causing the very harm that Congress sought to prevent – a "nuisance and invasion of privacy".

82.　As a direct and approximate result of Defendant's conduct, the Plaintiffs have suffered: (a) The periodic loss of cellular telephone service, (b) The costs associated with the usage of cellular telephone service during each call, (c) Statutory damages under the TCPA, and (d) the expenditure of costs and attorney's fees associated with the prosecution of the matter, along with other damages which have been lost.

83.　As a result of the above violations of the TCPA, the Defendant is liable to the Plaintiffs for the amount of $500.00 as damages for each violation pursuant to the TCPA, 47 U.S.C. § 227(b)(3)(B).

84.　Based on the willful, knowingly, and intentional conduct of the Defendant as described above, the Plaintiffs are also entitled to an increase in the amount of the award to treble the damages amount available under 47 U.S.C. § 227(b)(3)(B), in accordance with 47 U.S.C. § 227(b)(3).

WHEREFORE, the Plaintiffs respectfully request the Court enter judgment in their favor and against the Defendant for:

　　a.　$500.00 statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227 (b)(3)(B);

　　b.　Treble statutory damages of $1,500.00 per knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227 (b)(3);

　　c.　Costs of litigation, and;

　　d.　Such other or further equitable relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Please take notice that the Plaintiffs respectfully demand trial by jury on all issues so triable.

Dated this 8th day of November, 2017.

Respectfully Submitted,

THE LYONS LAW GROUP, P.A.

/s/ Rebbecca A. Goodall
Andrew M. Lyons, Esq.
Florida Bar No.: 0011288
Rebbecca A. Goodall, Esq.
Florida Bar No.: 0115344
4103 Little Road
New Port Richey, FL 34655
(727) 375-8900
(727) 375-2334 (fax)
Email Service:
pleadings@lyonslawgroup.com
Attorneys for Plaintiffs,
Nicholas France and Gretchen France