UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS FRANCE and
GRETCHEN FRANCE,

    Plaintiffs,

v.    Case No. 8:17-cv-3038-T-24 MAP

DITECH FINANCIAL, LLC,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss or for a More Definite Statement.[1] (Doc. No. 15). Plaintiffs oppose the motion. (Doc. No. 18). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and

---

[1] Defendant spends one paragraph addressing its request for a more a definite statement. The Court finds that a more definite statement is not warranted and denies the request without addressing it further.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiffs Nicholas and Gretchen France filed suit against Defendant Ditech Financial, LLC asserting three claims: (1) violations of Florida's Consumer Collection Practices Act, (2) violations of the Fair Debt Collection Practices Act, and (3) violations of the Telephone Consumer Protection Act.  In support of these claims, Plaintiffs allege the following in their amended complaint (Doc. No. 13).

On October 5, 2009, a mortgage was recorded against Plaintiffs' property in connection with a promissory note dated September 28, 2009.  Beginning around September of 2013, Plaintiffs started having financial difficulties and fell behind on their loan payments, which caused the loan to go into default.

Around May 1, 2014, Defendant took over servicing for the loan.  Thereafter, on December 16, 2015, Defendant initiated a foreclosure action against Plaintiffs in state court.  On January 25, 2016, Andrew Lyons, Esq. filed his appearance as counsel on behalf Nicholas and Gretchen France.

On July 12, 2016, Nicholas and Gretchen France filed their answer and affirmative

defenses in the foreclosure action. One of their affirmative defenses challenged the validity of the underlying loan debt; specifically, they disputed the amount of the underlying loan debt and Defendant's legal right to collect the debt.

On November 2, 2016, Lyons sent Defendant a written demand for verification of the underlying loan debt and a notice to cease and desist communication with Nicholas and Gretchen France. Additionally, the letter specifically stated that Nicholas and Gretchen France were giving notice of their withdrawal of any prior consent to be contacted for any purpose at home, at work, by cell phone, by mail, by email, or otherwise.

Plaintiffs contend that at no time had they given Defendant prior express consent to contact them on their cell phones using an automatic telephone dialing system ("ATDS") or an artificial pre-recorded voice. However, despite never giving express consent and despite expressly withdrawing any prior consent, Plaintiffs received 327 calls to their cell phones from Defendant using an ATDS and/or pre-recorded voice from May 2014 through October 2017.

Additionally, despite being told to cease and desist direct communication with Plaintiffs, Defendant contacted Plaintiffs via the mail 23 times during the period of November 2016 through October 2017. Twelve of those times consisted of mailings asking that Plaintiffs pay a certain amount of money by a certain date. These mailings also stated that Plaintiffs would be assessed a late fee of $62.46 if payment from Plaintiffs was not received by Defendant by the 16th of each month.

Additionally, on ten occasions, Defendant contacted Plaintiffs by mail for the purpose of collecting the underlying loan debt by asking Plaintiffs to submit documents to be considered for loss mitigation options. These mailings were an attempt to induce Plaintiffs to contact Defendant

in order to pay the debt or to discuss loan mitigation options in direct contravention to Lyons' cease and desist letter. Finally, on one occasion, Defendant mailed Plaintiff a letter asking them to pay the escrow shortage of $2,132.22.

Plaintiffs contend that Defendant's conduct was done willfully and that it was harassing to Plaintiffs. As a result, Plaintiffs assert three claims against Defendant: (1) violations of Florida's Consumer Collection Practices Act ("FCCPA"), (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), and (3) violations of the Telephone Consumer Protection Act ("TCPA"). In response, Defendant filed the instant motion to dismiss.

### III. Motion to Dismiss

Defendant moves to dismiss the amended complaint in its entirety. Accordingly, the Court will address each argument below.

#### A. FDCPA and FCCPA Claims

Plaintiffs assert claims for violations of the FDCPA and FCCPA. Florida Statute § 559.77(5) provides that when applying and construing the FCCPA, due consideration and great weight shall be given to the interpretations of the federal courts relating to the FDCPA. Therefore, the Court considers these two claims together.

##### 1. Knowledge of Attorney Representation

One of the ways that Plaintiffs contend that Defendant violated the FCCPA and FDCPA is by communicating directly with them after Lyons filed his notice of appearance in the foreclosure lawsuit. Florida Statute § 559.72(18) and 15 U.S.C. § 1692c(a)(2) both provide that in collecting a debt, a debt collector shall not communicate with a debtor if the debt collector knows that the debtor is represented by an attorney with respect to such debt and has knowledge

of, or can readily ascertain, such attorney's name and address.

Defendant responds that its communications with Plaintiffs after Lyons filed his notice of appearance was not a violation of the FCCPA or FDCPA. Specifically, Defendant argues that its knowledge of Lyons' representation of Plaintiffs in the foreclosure lawsuit is not sufficient knowledge that Lyons was representing Plaintiffs with respect to the underlying debt, because Defendant was not suing to collect on the underlying promissory note. Defendant is correct that a lawsuit to foreclose on a mortgage is different than the collection of the underlying debt, because payment of funds is not the objective of a foreclosure action. See Trent v. Mortgage Electronic Registration Systems, Inc., 618 F. Supp.2d 1356, 1360 (M.D. Fla. 2007). As such, courts have held that a notice of appearance in a foreclosure action does not constitute notice that the attorney is representing the debtor for all debt-related activity. See Nordwall v. PNC Mortgage, 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015); Wright v. Select Portfolio Servicing, Inc., 2015 WL 419618, at *5 (M.D. Fla. Feb. 2, 2015).

However, Plaintiffs point out that Defendant's mortgage foreclosure complaint asks the state court to: (1) determine the amounts due under the promissory note and mortgage; (2) order the clerk of court to sell the property; and (3) retain jurisdiction in order to enter a deficiency judgment if the proceeds of the sale are insufficient to cover the amount due. (Doc. No. 19-1). Plaintiffs point out that courts have found that foreclosure lawsuits that also seek a deficiency judgment are considered debt collection activity. See Goodin v. Bank of America, N.A., 114 F. Supp.3d 1197, 1207 (M.D. Fla. 2015)(citations omitted); Sheldon v. Clarfield, Okon, Salomone & Pincus, P.L., 2015 WL 4651320, at *1 (S.D. Fla. July 31, 2015). As such, Plaintiffs argue that the notice of appearance in the foreclosure lawsuit that also sought a deficiency judgment was

5

sufficient to put Defendant on notice that they were represented by counsel with respect to the underlying debt. The Court agrees with Plaintiffs and denies Defendant's motion on this issue.

### 2. Status as a Debt Collector

Next, Defendant argues that Plaintiffs' FDCPA claim fails, because Defendant is not a debt collector as defined by the FDCPA. See Wood v. Citibank, N.A., 2015 WL 3561494, at *3 (M.D. Fla. June 5, 2015)(stating that for the FDCPA to apply, the defendant must be a debt collector). The FDCPA defines a debt collector as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). However, the FDCPA excludes from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, "creditors and loan servicers are not 'debt collectors' for purposes of the FDCPA if they acquired or began servicing a loan prior to the debtor defaulting." Diaz v. First Marblehead Corp., 643 Fed. Appx. 916, 919 (11th Cir. 2016)(citations omitted).

Defendant points out that Plaintiffs allege that Defendant took over servicing for the loan around May 1, 2014. Defendant also argues that according to Defendant's foreclosure complaint, which contains the allegation that Plaintiffs defaulted on the underlying debt in June of 2015, Defendant began servicing the debt before it was in default. Therefore, Defendant argues that it is not a debt collector under 15 U.S.C. § 1692a(6)(F)(iii). The Court rejects this argument.

6

While the Court can take judicial notice of the foreclosure lawsuit, which was referenced in Plaintiffs' amended complaint (Doc. No. 13, p. 4), the Court cannot assume that the factual allegations contained in Defendant's foreclosure complaint are true. See U.S. v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994). Instead, the Court must accept the factual allegations as alleged by Plaintiffs, and they allege that the underlying debt was in default in September of 2013—prior to Defendant becoming the loan servicer.

Next, Defendant appears to argue that it is not a debt collector because it is collecting its own debt. Again, Defendant improperly relies on the state court foreclosure complaint to support this factual assertion.[2] Accordingly, the Court rejects Defendant's arguments and denies Defendant's motion on this issue.

### 3. Communications as Attempts to Collect a Debt

Next, Defendant argues that Plaintiffs' FDCPA and FCCPA claims should be dismissed, because Plaintiffs have not sufficiently alleged that Defendant's communications were made in connection with the collection of a debt. See Wood, 2015 WL 3561494, at *3, 5 (stating that for the FDCPA and FCCPA to apply, the challenged communication must have been made in connection with the collection of a debt). In support of this argument, Defendant cites to Nordwall for its discussion of this issue:

> In order for there to be a violation, the communication must be in

---

[2]If the Court were to consider the foreclosure complaint, it would not support Defendant's position. Attached to the foreclosure complaint is an Assignment of Mortgage ("Assignment") from Everbank to Green Tree Servicing LLC (which later merged with Defendant). (Doc. No. 19-1). The Assignment assigns both the mortgage and the promissory. The date of the Assignment is July 22, 2015—after Plaintiffs allege that the debt was in default. A debt collector includes an assignee of a debt if the debt was in default at the time it was assigned. See Monroe v. CitiMortgage, Inc., 2007 WL 1560194, at *2 (M.D. Fla. May 29, 2007)(citations omitted).

7

relation to the collection of a debt. Thus, not all communications with a debtor are in violation of the FCCPA or FDCPA. The Court looks objectively at the communication to determine whether the communication was made in connection with the collection of a debt. When the communication is informational in nature as opposed to demanding collection of a debt, the communication does not violate the FDCPA.

Nordwall, 2015 WL 4093530, at * 4 (internal citations omitted).

Likewise, the court in Wood stated the following:

The Eleventh Circuit has not established a bright-line rule for determining whether a communication is made in connection with the collection of a debt. Instead, courts undertake a fact specific inquiry. As a general principle, the absence of a demand for payment is not dispositive. Courts instead consider whether the overall communication was intended to induce the debtor to settle the debt. Communications that are merely "informational" do not constitute debt collection activity.

Wood, 2015 WL 3561494, at *3 (internal citations omitted).

Finally, in Pinson v. Albertelli Law Partners LLC, the court stated the following:

[W]hen determining whether a communication is "in connection with the collection of any debt," courts should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [writer] was attempting to collect a debt and was acting as a debt collector. A communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt. A demand for payment need not be express; there may be an implicit demand for payment where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt.

Pinson v. Albertelli Law Partners LLC, 618 Fed. Appx. 551, 553 (11th Cir. 2015)(internal

citations omitted).

Defendant specifically argues that twenty-two of the mailings at issue in this case were

not made in connection with the collection of a debt. The parties seem to agree that twelve of those mailings consisted of monthly mortgage loan statements and ten of those mailings were loss mitigation letters. Accordingly, the Court will analyze both types of mailings.

### a. Monthly Mortgage Loan Statements[3]

Plaintiffs allege in their complaint that the monthly mailings asked that Plaintiffs pay a certain amount of money by a certain date. These mailings also stated that Plaintiffs would be assessed a late fee of $62.46 if payment from Plaintiffs was not received by Defendant by the 16th of each month. However, pursuant to 12 C.F.R. § 1026.41, a servicer of a mortgage loan must send the borrower a monthly statement that provides certain information, including: (1) the amount due; (2) the payment due date; and (3) the amount of any late payment fee and the date on which such fee will be imposed.

The parties disagree as to whether the sending of the monthly mortgage loan statements to Plaintiffs were communications in connection with the collection of a debt. Plaintiffs contend that they were, and therefore, the communications violate their cease and desist directive.

Defendant cites to Brown v. Select Portfolio Servicing, Inc., 2017 WL 1157253, at *4 (S.D. Fla. Mar. 24, 2017), in which the court relied on the Consumer Financial Protection Bureau's ("CFPB") guidance to conclude that the monthly mortgage statements were not communications in connection with the collection of a debt. Pursuant to 15 U.S.C. § 1692k(e), there is no liability under the FDCPA when the debt collector's act or omission is done in good faith in conformity with any advisory opinion of the CFPB. On October 15, 2013, the CFPB

---

[3]Plaintiffs do not state in their complaint that the twelve monthly mailings were monthly mortgage loan statements. However, in response to Defendant's motion to dismiss, Plaintiffs do not challenge this characterization.

issued Bulletin 2013-12, in which it concluded that a mortgage "servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to [12 C.F.R. § 1026.41] . . . , notwithstanding a 'cease communication' instruction sent by the borrower, is not liable under the FDCPA." CFPB Bulletin 2013-12, p. 6 (October 15, 2013).[4] Thus, Defendant argues that its sending of the monthly mortgage statements did not violate the FDCPA because they were communications pursuant to § 1026.41.

Defendant acknowledges that if the monthly mortgage statements contain debt collection language in addition to the information required by § 1026.41, then the monthly mortgage statements could be considered communications in connection with the collection of a debt. See Kelliher v. Target National Bank, 826 F. Supp.2d 1324, 1328–29 (M.D. Fla. 2011). However, the Court agrees with Defendant that the fact that the statements requested that Plaintiffs pay a certain amount of money by a date certain is not sufficient to state a claim for a violation, because, pursuant to § 1026.41, a servicer of a mortgage loan must send the borrower a monthly statement that informs the recipient of the amount due and the payment due date.[5] Such

---

[4]CFPB Bulletin 2013-12 can be found at: https://files.consumerfinance.gov/f/201310_cfpb_mortgage-servicing_bulletin.pdf

[5]The Court notes that Plaintiffs rely on cases that found that the monthly mortgage statements at issue could be considered communications in connection with the collection of a debt. See Sellers v. Rushmore Loan Management Services, LLC, 2017 WL 1683613, at *6–7 (M.D. Fla. May 3, 2017); Prindle v. Carrington Mortgage Services, LLC, 2016 WL 4369424, at *15 (M.D. Fla. Aug. 16, 2016); Goodin v. Bank of America, N.A., 114 F. Supp.3d 1197, 1206 (M.D. Fla. 2015). However, the Prindle and Sellers cases involved plaintiffs that had previously filed for bankruptcy and received a discharge. Thus, the filing for bankruptcy and receiving a discharge is a distinguishing feature for those cases. This Court notes that the CFPB amended § 1026.41 to exempt servicers from having to provide monthly mortgage statements when the debtor is in bankruptcy. See Prindle, 2016 WL 4369424, at *16 n.20; CFPB Amendments, 2013 WL 5723225, at *63000–02 (Oct. 23, 2013). The Goodin case also involved a debtor that had

information was required by § 1026.41 and was provided for informational purposes.

Plaintiffs, however, also argue that their monthly mortgage statements from November of 2016 through October of 2017 falsely represented that Plaintiffs would be assessed a late fee of $62.46 if their payment was not received by Defendant by the 16th of each month. Plaintiffs have alleged in their complaint that their mortgage debt was accelerated in January of 2016, and as a result, they could not be assessed any late fees after that date. Specifically, Plaintiffs argue that once a borrower is in default and the loan is accelerated, the full amount of the loan becomes due immediately and there remains no obligation on the buyer to continue to make monthly payments, and thus, no late fees can accrue after acceleration. See Fowler v. First Federal Savings & Loan Association of Defuniak Springs, 643 So. 2d 30, 33 (Fla. 1st DCA 1994)(stating that after acceleration, late charges should not have continued to accrue).

However, late fees may accrue after acceleration if the mortgage specifically provides for it. See Patel v. Seterus, Inc., 2015 WL 13547010, at *4 (M.D. Fla. June 19, 2015). Plaintiffs contend that their mortgage does not expressly and unequivocally state that late fees continue to accrue after the holder accelerates the amount due thereunder. Defendant responds that the "Reinstatement" provision of the mortgage provides for accrual of late fees after acceleration if the debtor chooses to reinstate the mortgage. The Court disagrees with Defendant's interpretation of the "Reinstatement" provision.

The provision as issue provides the following, in relevant part:

> **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Buyer's failure to

---

previously declared bankruptcy, and thereafter, the monthly statements misstated the balance of the loan.

11

> pay an amount due under the Note or Security Instrument. . . . To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current . . . .Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.

(Doc. No. 19-1, p. 16). This provision does not provide that in order to reinstate the mortgage, Plaintiffs must pay late fees that would have accrued after acceleration had acceleration not been declared. Conversely, in Patel, the court explained that the mortgage at issue provided for the collection of late fees upon reinstatement:

> [T]he Mortgage provides a contractual basis for the collection of post-acceleration late fees. In relevant part, the Mortgage at issue in this case provides for reinstatement of the loan if the borrower "pays Lender all sums which then would be due under [the Mortgage] and the Note as if no acceleration had occurred." The clause "as if no acceleration had occurred" gives a noteholder the legal right to treat the note as if it had not been accelerated for purposes of reinstatement. Had no acceleration occurred, monthly payments would have continued to become due, and the noteholder would have been entitled to assess late fees on those sums that were past due. Accordingly, "if no acceleration had occurred" Plaintiffs would be obligated to pay late fees in order to exercise their right of reinstatement. Thus, Defendant had a contractual and legal right to require payment of post-acceleration late fees if Plaintiffs reinstated the loan. Consequently, so long as Plaintiffs still retained the right to reinstate, attempts to collect post-acceleration late fees were not unlawful.

Patel, 2015 WL 13547010, at *4 (internal citations omitted).

Accordingly, in the instant case, after the mortgage was accelerated, Defendant could no longer charge Plaintiffs a late fee, even in order to reinstate the mortgage. Therefore, Plaintiffs have sufficiently alleged that the monthly statements at issue provided incorrect information about the assessment of late fees, which can support Plaintiffs claims under the FDCPA and

FCCPA for Defendant's attempt to collect a fee for which it had no legal or contractual right to collect. 15 U.S.C. § 1692f(1); Fla. Stat. § 559.72(9). Therefore, the Court denies Defendant's motion on this issue.

### b. Loss Mitigation Letters

Plaintiffs also allege in their complaint that Defendant contacted them by mail for the purpose of collecting the underlying loan debt by asking Plaintiffs to submit documents to be considered for loss mitigation options. Plaintiffs allege that these mailings were an attempt to induce Plaintiffs to contact Defendant in order to pay the debt or to discuss loan mitigation options in direct contravention to Lyons' cease and desist letter.

There is not a blanket rule regarding whether loss mitigation letters constitute debt collection activity; instead, the content of the letters must be analyzed. See Farquharson v. Citibank, N.A., 664 Fed. Appx. 793, 801 n.6 (11th Cir. 2016). For example, a loss mitigation letter that demands payment and discusses additional fees if payment is not made could be considered debt collection activity. See id. at 801.

Plaintiffs have not attached the loss mitigation letters to their complaint, but they have alleged that the letters were sent in an attempt to induce Plaintiffs to contact Defendant in order to pay the debt. At the motion to dismiss stage, this allegation is sufficient. See Foster v. Green Tree Servicing, LLC, 2017 WL 5151354, at *6 (M.D. Fla. Nov. 3, 2017)(analyzing the content of the loss mitigation letter and finding that the purpose of the letter was to induce the debtor to contact the lender to "find a solution" for the default, i.e., to make a payment). Accordingly, the Court denies Defendant's motion on this issue.

13

#### 4. Damages

Next, Defendant argues that Plaintiffs cannot recover statutory damages under the FCCPA for each alleged violation; instead, they are limited to statutory damages of $1,000 per plaintiff.  See  Harrington v. RoundPoint Mortgage Servicing Corp., 163 F. Supp.3d 1240, 1248 (M.D. Fla. 2016)(citations omitted).  Florida Statute § 559.77(2) provides: "Any person who fails to comply with [the FCCPA] is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff."

Plaintiffs have not responded to this argument, and the Court interprets their silence as agreement with Defendant's contention.  Accordingly, the Court grants Defendant's motion on this issue and finds that an award of statutory damages under the FCCPA cannot exceed $1,000 per plaintiff.

### B.  TCPA Claim

Plaintiffs also assert a claim for violations of the TCPA.  Specifically, Plaintiffs allege that Defendant made 327 calls to their cell phones using an ATDS and/or pre-recorded voice from May 2014 through October 2017 without their consent.  As explained below, Defendant makes two arguments in support of dismissal of this claim.

#### 1. Factual Allegations Regarding an ATDS

First, Defendant argues that the TCPA claim should be dismissed because Plaintiffs fail to allege sufficient facts to support their contention that Defendant used an ATDS.  The Court disagrees and finds that Plaintiffs have alleged sufficient facts to support their contention that Defendant used an ATDS.  Specifically, Plaintiffs allege that they would often receive automated

pre-recorded messages from unanswered calls, which is indicative of the use of an ATDS. (Doc. No. 13, ¶ 31). Additionally, they give an example of a March 8, 2017 phone call that Gretchen France answered, during which she experienced a period of silence for several seconds and then a mechanical clicking noise prior to a live person coming on the line, which is also indicative of the use of an ATDS. (Doc. No. 13, ¶ 36–37). The Court finds that these additional details are sufficient to support Plaintiffs' contention that Defendant used an ATDS. See Cummings v. Rushmore Loan Mgmt. Svc., 2017 WL 4869016, at *3 (M.D. Fla. Oct. 26, 2017); Gulisano v. J.A. Cambece Law Office, PC, 2016 WL 7536097, at *4 (S.D. Fla. Aug. 9, 2016); De Los Santos v. Millward Brown, Inc., 2014 WL 2938605, at *3 (S.D. Fla. June 30, 2014).

Next, Defendant argues that given that the phone calls were intentionally placed to communicate with Plaintiffs specifically, an inference can be drawn that the phone calls were not made by an ATDS, which calls phone numbers using a random or sequential number generator. Pursuant to 47 U.S.C. § 227(a)(1), an ATDS is defined as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

Plaintiffs respond that the FCC has interpreted the statutory definition of an ATDS to include predictive dialers, which make calls from a list of numbers fed into the device. See Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1114 (11th Cir. 2014). Plaintiffs' allegations are consistent with the use of a predictive dialer, and therefore, the Court rejects Defendant's argument on this issue.

### 2. Established Business Relationships

Second, Defendant argues that the TCPA claim should be dismissed because Plaintiffs

and Defendant have an established business relationship as debtors and creditor. Defendant argues that the FCC "created an express exemption for calls made to a party with whom the caller has an established business relationship" and cites to 47 C.F.R. § 64.1200(a)(2)(iv). (Doc. No. 15, p. 18). However, as of October 16, 2013, that regulation no longer exists. See Rahn v. Bank of America, N.A., 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016). Furthermore, that regulation only applied to calls made to residential phone lines, not to cell phones. See id. Accordingly, the Court denies Defendant's motion on this issue.

### C. Compulsory Counterclaims

Next, Defendant argues that Plaintiffs' FCCPA, FDCPA, and TCPA claims are compulsory counterclaims that should have been raised in the state court foreclosure lawsuit. Furthermore, Defendant argues that Plaintiffs' failure to assert them in the state court foreclosure action results in a waiver of these claims.

Plaintiffs respond that these claims were not compulsory counterclaims, because they did not arise out of the same transaction or occurrence as the foreclosure action. The Court agrees with Plaintiffs that the FDCPA claim is not logically related to the state court foreclosure action. See Roban v. Marinosci Law Group, 34 F. Supp.3d 1252, 1256 (S.D. Fla. 2014)(citations omitted). As the FCCPA is patterned after the FDCPA, it follows that the FCCPA claim is also not a compulsory counterclaim. Finally, Plaintiffs' TCPA claim, which involves the alleged improper use of an ATDS, also does not arise out of the same operative facts as the foreclosure lawsuit. See Bianchi v. Nationwide Credit, Inc., 2012 WL 12886182, at *2 (S.D. Fla. Dec. 14, 2012). Accordingly, the Court denies Defendant's motion on this issue.

## IV. Conclusion

Based on the above, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss or for a More Definite Statement (Doc. No. 15) is **GRANTED IN PART AND DENIED IN PART:** The motion is granted to the extent that an award of statutory damages under the FCCPA cannot exceed $1,000 per plaintiff; otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of April, 2018.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record